**UNITED STATES DISTRICT COURT**

**DISTRICT OF MASSACHUSETTS**

OLIVIER MISIGARO,                               Civil Action No. 1:26-cv-10298-IT

Petitioner,                                     Agency File No. A 216-734-598

v.

CHRISTOPHER BRACKETT,
Superintendent, Strafford County Department
of Corrections; DAVID WESLING, Acting
Boston Field Office Director, Enforcement
and Removal Operations, Immigration and
Customs Enforcement; MARKWAYNE
MULLIN, Secretary, U.S. Department of
Homeland Security; TODD LYONS, Acting
Director, U.S. Immigration and Customs
Enforcement; TODD BLANCHE, U.S.
Attorney General,

     Respondents.

**FIRST AMENDED PETITION FOR WRIT OF HABEAS CORPUS
PURSUANT TO 28 U.S.C. § 2241 AND COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF**

Petitioner Olivier Misigaro, through undersigned counsel, petitions for a writ of habeas

corpus under 28 U.S.C. § 2241 and seeks declaratory and injunctive relief. This amended petition

challenges his renewed immigration detention, the revocation of his court-ordered release under

supervision, and Respondents' threatened third-country removal to Cameroon without the

individual process required by the Constitution, the Immigration and Nationality Act, the

Convention Against Torture as implemented by FARRA and regulations, and binding regulations

governing post removal order custody. Petitioner does not ask this Court to review or vacate his

underlying final order of removal. He seeks release from unlawful custody and an order preventing

1

Respondents from using his detention to execute an unlawful, procedurally defective, and refoulement-tainted removal to Cameroon.

**INTRODUCTION**

1.      This case returns to the Court because ICE has converted a court-ordered release into a revolving door back to detention. On February 6, 2026, this Court granted Mr. Misigaro's habeas petition and ordered him released under an Order of Supervision because Respondents had failed to produce evidence that his removal was significantly likely in the reasonably foreseeable future.

2.      ICE complied and released Mr. Misigaro. The agency then directed him to report to an ERO office on April 22, 2026, for the purpose of being enrolled in an alternatives to detention program but detained him on arrival. Respondents now assert that removal is suddenly foreseeable because ICE has identified Cameroon as a third country of removal, has placed him on a removal manifest, and claims that Cameroon provided credible diplomatic assurances that he will not be tortured in Cameroon. That is not a lawful changed circumstance within the meaning of *Zadvydas*, *Kong*, 8 C.F.R. § 241.13(i), or due process. It is an attempt to satisfy the foreseeability standard by announcing an unlawful removal.

3.      Mr. Misigaro is a Rwandan national whose removal to Rwanda has been withheld under 8 U.S.C. § 1231(b)(3). He has no citizenship, residence, family, legal status, community, or safe protection resources in Cameroon. He fears removal to Cameroon because Rwanda's transnational repression apparatus can reach him there, because Cameroon is detaining non-Cameroonian U.S. deportees with U.S. protection orders and pressuring or forcing them toward return to their home countries, and because recent evidence shows that Cameroon's assurances have not prevented detention, coercion, and chain refoulement.

4.    Respondents' own filing confirms the urgency. Assistant Field Office Director Mark Anzelmo declared that ICE detained Mr. Misigaro on April 22, 2026, revoked his Order of Supervision, identified Cameroon for removal, had him manifested for a removal flight, did not need a travel document, and intended to remove him to Cameroon on April 28, 2026 absent court relief. Respondents also confirmed they intend to rely on the Department of Homeland Security's March 30, 2025 Guidance Regarding Third Country Removals.

5.    That Guidance is the policy at issue in *D.V.D. v. U.S. Department of Homeland Security*. It permits removal to countries with State Department-approved assurances without further process, and, where no assurances exist, places the burden on the noncitizen to spontaneously express fear without affirmative inquiry, meaningful notice, counsel notification, or adequate time to prepare. Courts considering individual petitions, including *Kumar v. Wamsley*, have held that this process violates due process and that the D.V.D. class litigation and Supreme Court stay do not preclude individual habeas relief.

6.    ICE's handling of this case demonstrates the policy's defect. Mr. Misigaro, through counsel, expressed fear of removal to Cameroon. USCIS scheduled a fear interview for April 24, 2026. Counsel confirmed availability and submitted evidence. USCIS then wrote that it was prepared to conduct the interview, but ICE requested that it be canceled. Respondents cannot lawfully cancel the screening to determine whether Mr. Misigaro faces credible threats of persecution and then use purported assurance from Cameroon—assurance that predates the evidence of credible threats that Mr. Misigaro will present—as the changed circumstance justifying custody pending removal.

7.    The requested relief is specific to Petitioner. Mr. Misigaro asks this Court to order his release unless Respondents can establish lawful detention after full compliance with the governing

regulations and due process, and to enjoin Respondents from transferring him outside the First Circuit or removing him to Cameroon or any other third country unless and until they provide the process required in *Kumar*, *D.V.D.*, *Aden*, *Nguyen*, and related cases: written notice to Petitioner and counsel; the statutory basis for the country designation; affirmative inquiry about fear with a written record; adequate time to consult counsel, gather evidence, and prepare; a meaningful fear screening; IJ review and reopening procedures; and at least fifteen days after any adverse screening determination to file or pursue a motion to reopen. Because the First Circuit's resolution of *D.V.D.* will likely be relevant to evaluation of Petitioner's claim, Petitioner respectfully requests that this Court stay his transfer or removal and provide for further evaluation of his claim following the First Circuit's ruling in *D.V.D.*

8.      And at minimum, Petitioner asks this Court to stay his transfer until the Immigration Court can rule on his pending motion to reopen or in the event it does not timely rule, until Petitioner can seek relief before the First Circuit.

## PARTIES

9.      Petitioner Olivier Misigaro is a native and citizen of Rwanda. He is detained by ICE at the Strafford County Department of Corrections, 266 County Farm Road, Dover, New Hampshire 03820. He is within the First Circuit and remains in ICE custody pursuant to 8 U.S.C. § 1231(a)(6).

10.      Respondent Christopher Brackett is the Superintendent of the Strafford County Department of Corrections, where Petitioner is presently detained. He is named in his official capacity as Petitioner's immediate physical custodian. If Petitioner is moved before adjudication, Petitioner requests substitution or addition of the proper immediate custodian as justice requires.

4

11.      Respondent David Wesling is the Acting Boston Field Office Director for Enforcement and Removal Operations, Immigration and Customs Enforcement. He is named in his official capacity.

12.      Respondent Markwayne Mullin is the Secretary of the Department of Homeland Security. He is responsible for DHS policies and practices, including the March 30, 2025 Guidance Regarding Third Country Removals. She is named in her official capacity.

13.      Respondent Todd Lyons is the Acting Director of U.S. Immigration and Customs Enforcement. He is responsible for ICE detention, transfer, and removal practices. He is named in his official capacity.

14.      Respondent Todd Blanche is the Acting Attorney General of the United States and supervises the Executive Office for Immigration Review. He is named in his official capacity to the extent relief requires coordination with EOIR or reopening-related procedures.

## JURISDICTION AND VENUE

15.      This Court has jurisdiction under 28 U.S.C. § 2241 because Petitioner is in custody under color of federal authority and alleges that his custody violates the Constitution, laws, and treaties of the United States.

16.      This Court also has jurisdiction under 28 U.S.C. § 1331, the Suspension Clause, U.S. Const. art. I, § 9, cl. 2, the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and the All Writs Act, 28 U.S.C. § 1651.

17.      This Court has continuing jurisdiction to enforce and give effect to its February 6, 2026, Memorandum and Order granting habeas relief and ordering release under supervision.

18.      Petitioner does not seek review of the immigration judge's removal order, the denial of asylum, or any final order of removal. His claims arise from post-order detention,

revocation of court-ordered supervised release, and the process for asserting fear-based protection from Cameroon while in detention, and the unlawfulness of executing removal without that process.

19.    8 U.S.C. § 1252(g) does not bar these claims. Petitioner challenges legal and constitutional defects in detention and third-country removal procedures, not the discretionary decision to commence proceedings, adjudicate a case, or execute a removal order in a lawful manner. The government has no discretion to detain unlawfully, revoke release in violation of regulations, or remove a person in violation of the INA, FARRA, and due process.

20.    8 U.S.C. § 1252(f)(1) does not bar individual relief. Petitioner seeks individual habeas and injunctive relief tailored to his own custody and proposed third-country removal, not classwide relief.

21.    Venue is proper because this case was filed in this District while Pettioner was present there, Respondents are located in or direct actions from this District, substantial events occurred in this District and within the First Circuit, this Court entered the February 6, 2026 habeas release order, and Petitioner remains detained within the First Circuit after ICE re-detained him pursuant to Boston ERO action.

## FACTUAL BACKGROUND

22.    Mr. Misigaro entered the United States on July 4, 2019 with a B-2 visitor visa and was authorized to remain until January 3, 2020.

23.    After his status expired, he applied for asylum, withholding of removal, and protection under the Convention Against Torture. He sought protection based on persecution and torture by the Rwandan government, his Hutu ethnicity, public criticism of the Rwandan Patriotic

Front and President Paul Kagame's government, and his associations with Rwandan opposition figures.

24.      ICE detained Mr. Misigaro on or about January 17, 2025 and served him with a Notice to Appear charging him with overstaying his visa. He conceded removability and sought protection from removal.

25.      On March 26, 2025, the Immigration Judge ordered Mr. Misigaro removed but granted withholding of removal to Rwanda under 8 U.S.C. § 1231(b)(3). The Immigration Judge did not reach CAT deferral. The removal order therefore remains enforceable only to a lawful country of removal other than Rwanda, and only if Respondents comply with the statutory hierarchy and the procedures necessary to prevent persecution, torture, and chain refoulement.

26.      Mr. Misigaro's withholding order reflects that Rwanda is not a legally available country of removal. The government may not accomplish indirectly through Cameroon what the withholding order prohibits directly, namely return to Rwanda or placement in a country where Rwanda can reach him and where Cameroon is likely to refoule him.

27.      On February 6, 2026, this Court granted Mr. Misigaro's habeas petition. The Court found that he had been detained more than ten months beyond his final removal order, that he had shown good reason to believe there was no significant likelihood of removal in the reasonably foreseeable future, and that Respondents had failed to offer evidence to rebut that showing. The Court ordered that he be transported to Maine and released from ICE custody subject to an Order of Supervision.

28.      ICE released Mr. Misigaro on or about February 8, 2026, under an Order of Supervision. The Order of Supervision required him to report as directed, comply with travel

restrictions, provide address and employment information, and assist with removal-related document requests. Petitioner complied with the Order of Supervision.

29.    On April 19, 2026, ICE issued a Form G-56 directing Mr. Misigaro to appear at the Scarborough, Maine ERO office on April 22, 2026 for "BI SmartLink enrollment." The notice did not state that ICE intended to arrest him, revoke release, transfer him, or remove him.

30.    Mr. Misigaro appeared as directed on April 22, 2026. ICE re-detained him and revoked his Order of Supervision.

31.    . Respondents have stated that the Order of Supervision was revoked under 8 C.F.R. § 241.13(i)(2) because circumstances had changed such that there was now a significant likelihood of removal in the reasonably foreseeable future, specifically to Cameroon.

32.    Respondents have not identified any violation of the Order of Supervision as the basis for revocation. Nor have they identified any conduct by Mr. Misigaro showing danger, flight risk, obstruction, or inability to manage the case under supervision.

33.    Respondents' asserted changed circumstance is that ICE identified Cameroon as a third country for removal, placed Mr. Misigaro on a removal manifest, and claims that Cameroon provided diplomatic assurances on December 8, 2025, which the Department of State deemed credible on January 7, 2026.

34.    Respondents' declaration states that ICE does not need a travel document to remove Mr. Misigaro to Cameroon and that his acceptance by Cameroon and placement on the charter manifest "serves as the travel document." This means detention was not necessary to obtain a travel document.

35.    Respondents' declaration also states that Mr. Misigaro, through counsel, expressed fear of removal to Cameroon.

36.    USCIS scheduled a fear interview for April 24, 2026 at 4:00 p.m. Counsel confirmed availability and sent evidence concerning Cameroon and Rwanda, including an expert affidavit and evidence of country-condition including treatment of U.S. Deportees in Cameroon.

37.    USCIS then informed counsel that USCIS had been prepared to conduct the 4:00 p.m. interview, but ICE requested that it be canceled. As of this filing, Petitioner has not received the meaningful fear screening, IJ review, or opportunity to reopen required before removal to Cameroon.

38.    Respondents claim removal is foreseeable while simultaneously canceling the very process that could determine whether removal to Cameroon is lawful. A removal that cannot lawfully be executed without additional procedures cannot provide the statutorily required foreseeability to justify renewed detention.

39.    The expert affidavit of Leonce Byimana concludes that transfer to Cameroon would expose Mr. Misigaro to persecution, abduction, torture, or death by Rwandan state actors operating in Cameroon or through cooperation with Cameroonian authorities. Mr. Byimana explains that Rwanda has a documented transnational repression apparatus and that Cameroon lacks the capacity or willingness to protect Mr. Misigaro from it.

40.    Mr. Byimana further explains that Rwanda has a specific and recent intelligence interest in Mr. Misigaro based on his public criticism of the Rwandan government, prior detention and torture by CID/RIB, associations with RNC members, Hutu ethnicity, and diaspora surveillance.

41.    Recent reporting and evidence arising after the Department of State's January 7, 2026, assessment of Cameroon's diplomatic assurances shows that Cameroon is not a safe or lawful third-country destination for protected deportees. The United States has deported non-

Cameroonian migrants to Cameroon, many of whom had U.S. protection from removal to their home countries. They have reportedly been detained in a state-run compound in Yaounde and pressured to return to their home countries or face indefinite detention. This is consistent with reported treatment of protected deportees in additional African countries that have recently entered into third-country deportation agreements with the United States, notably Equatorial Guinea and Ghana.

42. A Cameroonian foreign office official reportedly told deportees from the United States that they were going back to their countries and that they could not seek refugee status in Cameroon. Journalists and a lawyer investigating the deportations were detained by Cameroonian authorities. At least one person with protection from removal sent to Cameroon has reportedly returned to their country of origin. Again, this is consistent with refoulement of protected deportees in Equatorial Guinea and Ghana. This post-assurance evidence undermines Respondents' reliance on generalized diplomatic assurances and supports Petitioner's fear of chain refoulement to Rwanda.

43. Petitioner has filed a motion to reopen with the immigration court to seek withholding and CAT protection from removal to Cameroon and to preserve statutory and constitutional claims arising from the Cameroon designation.

44. Until Petitioner receives the required process and the motion to reopen/protection process is adjudicated, removal to Cameroon is not lawful and therefore not reasonably foreseeable. At most, ICE has identified a planned unlawful removal, not a significant likelihood of lawful removal in the reasonably foreseeable future.

## LEGAL FRAMEWORK

45.    *Zadvydas v. Davis*, 533 U.S. 678 (2001), holds that post-order detention under 8 U.S.C. § 1231(a)(6) is limited to the period reasonably necessary to effectuate removal. After the presumptively reasonable six-month period, once the noncitizen provides good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future, the government must respond with evidence sufficient to rebut that showing.

46.    In *Kong v. United States*, 62 F.4th 608, 619-20 (1st Cir. 2023), the First Circuit recognized that ICE's decision to re-detain a noncitizen previously released under supervision is governed by ICE's own regulations requiring an individualized determination by ICE that, based on changed circumstances, removal has become significantly likely in the reasonably foreseeable future.

47.    The revocation of release under an Order of Supervision must comply with 8 C.F.R. §§ 241.4 and 241.13. Those regulations require meaningful notice of the reasons for revocation, a timely informal interview, custody review, and decision-making by an authorized official. A Field Office Director or equivalent official must have delegated authority and must comply with the public-interest and procedural requirements of 8 C.F.R. § 241.4(l)(2).

48.    INA § 241(b)(3), 8 U.S.C. § 1231(b)(3), prohibits the government from removing a noncitizen to any country where his life or freedom would be threatened on account of a protected ground. FARRA and CAT implementing regulations prohibit removal to a country where the person is more likely than not to be tortured. Those protections are country-specific, mandatory, and apply to the actual country of removal, including a third country.

49.    Withholding and CAT protections do not prevent removal to a lawfully designated third country, but they prohibit removal to a country where the person faces persecution, torture, or chain refoulement. *Johnson v. Guzman Chavez*, 594 U.S. 523 (2021), recognizes that

withholding is country-specific; it does not authorize the government to bypass due process or statutory non-refoulement protections for a new country.

50.     When DHS designates a third country after removal proceedings, the noncitizen must receive meaningful notice and an opportunity to assert withholding and CAT claims as to that country. *Matter of A-S-M-*, 28 I. & N. Dec. 282 (BIA 2021), recognizes that a noncitizen may seek withholding from any country to which DHS states it may remove him. *Matter of Anunciacion*, 12 I. & N. Dec. 815, 818 (BIA 1968), similarly recognizes that if proceedings are reopened for designation of another country, the respondent has the right to assert a fear of persecution as to that country.

51.     *D.V.D. v. U.S. Department of Homeland Security*, 2026 WL 521557 (D. Mass. Feb. 25, 2026), although stayed pending appeal, explains the statutory and due process defects in DHS's March 30, 2025 third-country removal Guidance. The policy fails to ensure individualized evaluation of risk, relies on noncitizens to spontaneously express fear, permits severely compressed timelines, and treats generalized diplomatic assurances as sufficient to bypass individualized fear procedures.

52.     *Kumar v. Wamsley*, 2025 WL 3204724 (W.D. Wash. Nov. 17, 2025), granted individual habeas for a petitioner subject to the same policy. *Kumar* held that the *D.V.D.* class action and the Supreme Court's stay did not preclude individual relief, and it ordered the government not to remove the petitioner to a third country without written notice, affirmative inquiry about fear, reasonable-fear screening, reopening procedures if fear is found, and fifteen days after an adverse determination to move to reopen.

53.     Other courts have required similar safeguards, including written notice of the designated country and statutory basis, an obligation to inquire about fear with a written

memorialization, notice to counsel, adequate time to prepare, access to counsel and evidence, and IJ review of adverse fear determinations. See *Aden v. Nielsen*, 409 F. Supp. 3d 998 (W.D. Wash. 2019); *Nguyen v. Scott*, 796 F. Supp. 3d 703 (W.D. Wash. 2025); *Elshourbagy v. Bondi*, 2025 WL 3718993 (W.D. Wash. Dec. 23, 2025); *Sagastizado v. Noem*, 802 F. Supp. 3d 992 (S.D. Tex. 2025); *Gomez v. Mattos*, 2025 WL 3101994 (D. Nev. Nov. 6, 2025).

54.    Many of these decisions were issued in response to habeas petitions. Courts siting in habeas have recognized that the jurisdictional channeling provisions of the INA do not reach claims that are independent of a removal order. That is the case, where, as here, Mr. Misigaro does not challenge any defect in the removal proceedings itself, but rather Respondents' attempt to detain him for purposes of removing him to Cameroon entirely outside of any removal proceeding. In case, this Court need not review the removal order, nor could Petitioner have brought these claims in the context of removal proceedings themselves. *Aden*, 409 F. Supp. 3d at 1006. Unless Respondents' own agency decides to allow his proceedings to be reopened, or the First Circuit construes the notice announcing his removal to Cameroon as a "final order," this Court remains his only forum for Article III review of his stuatory and constitutional claims.

## COUNT I
### Respondents' Renewed Detention Violates 8 U.S.C. § 1231(a)(6), Zadvydas, and the Fifth Amendment Because Lawful Removal Is Not Significantly Likely in the Reasonably Foreseeable Future

55.    Petitioner realleges and incorporates paragraphs 1 through 53.

56.     Petitioner has been in post-order custody beyond the presumptively reasonable removal period. This Court already held that Respondents failed to establish a significant likelihood of removal in the reasonably foreseeable future and ordered release.

57.     Respondents' new assertion of foreseeability rests on an intended removal to Cameroon. But the relevant question is not whether ICE has chartered an aircraft and placed Petitioner's name on a manifest. It is whether lawful removal is significantly likely in the reasonably foreseeable future.

58.     Lawful removal to Cameroon is not significantly likely because Mr. Misigaro has expressed fear of removal to Cameroon, submitted evidence of individualized risk, and seeks reopening to assert withholding and CAT protection from Cameroon. ICE canceled the scheduled USCIS fear interview. Respondents therefore have not completed the process necessary to determine whether Cameroon is legally available.

59.     Removal is also not lawful or foreseeable because post-assurance evidence shows that Cameroon has detained non-Cameroonian deportees, pressured them toward return to countries where U.S. courts granted protection, and denied meaningful refugee protection procedures. The evidence creates a grave risk that Cameroon will indefinitely detain Mr. Misigaro or return him to Rwanda, directly or indirectly.

60.     A flight manifest and generalized diplomatic assurances cannot cure a statutory and constitutional bar to removal. Nor can a legally defective removal plan supply the changed circumstance necessary to justify renewed detention.

61.     Continued detention under these circumstances violates 8 U.S.C. § 1231(a)(6), *Zadvydas*, this Court's February 6, 2026 order, and the Due Process Clause.

## COUNT II
### Improper Revocation of Release Under 8 C.F.R. §§ 241.4 and 241.13, Kong, and Due Process

62.     Petitioner realleges and incorporates paragraphs 1 through 60.

63.     ICE released Mr. Misigaro under an Order of Supervision pursuant to this Court's February 6, 2026 order. ICE then re-detained him at a scheduled check-in and revoked release.

64.     ICE did not revoke release based on an alleged violation of supervision. The revocation was based on a boilerplate assertion that circumstances had changed and removal was now significantly likely in the reasonably foreseeable future.

65.     ICE's asserted changed circumstance is legally insufficient. A planned third-country removal that violates due process, the INA, FARRA, and non-refoulement protections cannot be the changed circumstance that justifies detention. ICE cannot bootstrap unlawful removal into lawful custody.

66.     ICE failed to provide meaningful pre-deprivation or contemporaneous notice explaining the factual basis for revocation. The April 22 appointment notice described planned "BI SmartLink enrollment," not arrest, transfer, revocation, or removal. Petitioner was not given a meaningful opportunity to consult counsel or contest the basis for re-detention before liberty was taken.

67.     To the extent Respondents rely on 8 C.F.R. § 241.4(l), the revocation also fails because Respondents have not shown that an official with authority under 8 C.F.R. § 241.4(l)(2) and § 1.2 made the required decision, made a public-interest finding, explained why circumstances did not permit referral to the Executive Associate Director or other proper official, or provided a particularized decision rather than a boilerplate conclusion.

68.     To the extent Respondents rely on 8 C.F.R. § 241.13(i), the revocation fails because there was no valid individualized determination that removal had become significantly likely in the reasonably foreseeable future. ICE's own cancellation of the fear interview, the pending motion to reopen, and the Cameroon refoulement record show the opposite.

15

69.    The informal interview process did not cure the violation. Due process required a meaningful opportunity to respond to the real reasons for re-detention, with counsel, evidence, and a particularized explanation. A perfunctory post-arrest interview cannot justify the seizure of a person whom this Court had ordered released.

70.    The government's interests could be protected through the same Order of Supervision that this Court ordered, and ICE successfully administered. Respondents have not shown that detention is necessary to secure travel documents, because they assert no travel document is needed. They have not shown an OSUP violation, obstruction, or flight risk. Less restrictive supervision remains available.

71.    Respondents' revocation of release and renewed detention violate the governing regulations, *Kong*, the Due Process Clause, and this Court's prior order.

### COUNT III
**As-Applied Due Process Challenge to DHS's Third-Country Removal Policy Under Kumar and D.V.D.**

72.    Petitioner realleges and incorporates paragraphs 1 through 70.

73.    The Due Process Clause applies to Mr. Misigaro, a person physically present in the United States and detained by federal officers. Removal to a country where he faces persecution, torture, detention, or chain refoulement is a grave deprivation of liberty.

74.    Respondents intend to apply the March 30, 2025 DHS Guidance Regarding Third Country Removals to Mr. Misigaro. The policy is constitutionally inadequate as applied to him.

75.    The policy permits removal to a country with generalized diplomatic assurances without individualized fear procedures. That is precisely what Respondents seek to do with Cameroon. The result would deprive Mr. Misigaro of the opportunity to meaningfully assert fear of persecution, torture, and chain refoulement before removal.

16

76.     Even where DHS provides notice, the policy fails because it does not require an officer to affirmatively ask whether the noncitizen fears the third country, does not require notice to counsel, does not require notice of the statutory basis for the designation, does not provide adequate time to prepare for a hearing, and does not guarantee access to evidence, counsel, an interpreter, IJ review, or reopening procedures.

77.     The defects are not speculative. Mr. Misigaro expressed fear of being sent to Cameroon. Counsel submitted evidence. USCIS was prepared to conduct a fear interview. ICE requested cancellation. Respondents now seek to proceed without the required process.

78.     Moreover, the evidence that demonstrates Mr. Misigaro is at grave risk of persecution, torture, and chain refoulement if sent to Cameroon post-dates the United States' evaluation of the diplomatic assurances. This evidence undermines the diplomatic assurances and further underscores the deficiencies in the policy.

79.      Under *Kumar*, due process requires at minimum: written notice of the third country in a language Petitioner understands; notice to counsel; identification of the statutory basis for designation; an affirmative inquiry whether Petitioner fears persecution, torture, or chain refoulement in or from that country, with the response memorialized in writing; at least ten days to consult counsel, gather evidence, and prepare for a fear interview; a meaningful fear screening; reopening or IJ proceedings if a reasonable fear is found; and at least fifteen days after any adverse screening determination to file or pursue a motion to reopen.

80.     The Supreme Court's stay of the class wide preliminary injunction in *D.V.D.* does not resolve the merits of Mr. Misigaro's individual habeas claims and does not bar individualized as-applied relief. *Kumar* squarely rejected that argument.

17

81.     Respondents' threatened removal to Cameroon without the above safeguards violates the Fifth Amendment.

## COUNT IV
**Statutory and Ultra Vires Challenge to Third-Country Removal to Cameroon Under 8 U.S.C. § 1231(b)(2), § 1231(b)(3), FARRA, and the APA/Nonstatutory Review**

82.     Petitioner realleges and incorporates paragraphs 1 through 79.

83.     Mr. Misigaro was admitted to the United States as a visitor and is not an arriving alien. The country-selection provisions applicable to him are those in 8 U.S.C. § 1231(b)(2), not 8 U.S.C. § 1231(b)(1).

84.     Section 1231(b)(2) establishes a sequential hierarchy for countries of removal. DHS may reach a last-resort willing country only after satisfying statutory prerequisites, including that removal to prior listed countries is impracticable, inadvisable, or impossible. Cameroon has no meaningful connection to Mr. Misigaro.

85.     Respondents have not provided a lawful, individualized, and reviewable explanation for how Cameroon was selected under the statutory hierarchy. Nor have they provided the statutory basis for the designation in the notice served on Petitioner.

86.     Section 1231(b)(3) prohibits removal to any country where Petitioner's life or freedom would be threatened on account of a protected ground. FARRA and the CAT regulations prohibit removal to any country where he is more likely than not to be tortured. These prohibitions apply to Cameroon and to chain refoulement from Cameroon to Rwanda.

87.     Respondents cannot satisfy § 1231(b)(3), FARRA, or the CAT regulations through blanket diplomatic assurances that do not address Mr. Misigaro's individualized profile, Rwanda's specific interest in him, Rwanda's capacity to target him in Cameroon, Cameroon's detention and refoulement practices, and post-assurance evidence of coercion and return of protected deportees.

18

88.    DHS's reliance on the March 30, 2025 Guidance and generalized assurances is arbitrary, contrary to law, ultra vires, and unconstitutional as applied to Mr. Misigaro. The policy denies the individualized assessment required by § 1231(b)(3), FARRA, and due process.

89.    Respondents may not execute removal to Cameroon unless and until they comply with the country-selection hierarchy and provide a meaningful individualized process for Petitioner to seek withholding and CAT protection from Cameroon, including protection from chain refoulement to Rwanda.

## COUNT V
### Risk of Direct and Chain Refoulement to Rwanda

90.    Petitioner realleges and incorporates paragraphs 1 through 87.

91.    The United States is prohibited from removing Petitioner to a third country where it knows or has reason to believe he will be persecuted, tortured, or onward removed to a country where he faces persecution or torture.

92.    Mr. Misigaro's removal to Rwanda has already been withheld. Cameroon is not a safe third country for him. Evidence shows both a direct risk in Cameroon and a chain-refoulement risk to Rwanda.

93.    Direct risk exists because Rwanda's transnational repression apparatus targets perceived dissidents abroad, especially in African countries where Rwanda has diplomatic, military, diaspora, or economic reach. Mr. Misigaro has the profile Rwanda targets: Hutu ethnicity, public criticism of the Kagame government, prior CID/RIB torture and detention, association with RNC figures, and documented diaspora surveillance.

94.    Chain-refoulement risk exists because recent evidence shows that Cameroon has detained non-Cameroonian deportees from the United States, including people with U.S. protection orders, and pressured them to return to their home countries or face indefinite detention.

Reporting that postdates the purported diplomatic assurances states that Cameroonian officials told deportees they could not seek refugee status in Cameroon and would be returned to their country of citizenship.

95.    The risk is not speculative. It is supported by post-January 7, 2026 events, recent reporting, and expert evidence. Those developments undermine the very assurances on which Respondents rely.

96.    Removing Mr. Misigaro to Cameroon would expose him to persecution, torture, disappearance, abduction, assassination, indefinite detention, or onward return to Rwanda. It would violate statutory withholding, FARRA, CAT regulations, and due process.

## COUNT VI
### Right to Counsel, Notice to Counsel, and Meaningful Opportunity to Present Evidence

97.    Petitioner realleges and incorporates paragraphs 1 through 94.

98.    A meaningful opportunity to be heard in the third-country removal context requires notice to counsel and sufficient time for counsel to prepare and submit evidence. The stakes are life, liberty, and protection from refoulement.

99.    Respondents knew Petitioner was represented by counsel. Counsel expressed fear, confirmed availability for the scheduled interview, and submitted evidence. ICE nevertheless requested cancellation of the interview.

100.    The denial or cancellation of meaningful counsel-assisted process violates due process and, to the extent existing reasonable-fear procedures are triggered, violates regulatory protections allowing counsel, interpretation, explanation of the process, and submission of evidence.

101.    Without counsel notification, adequate time, and an opportunity to present evidence and seek reopening, the risk of erroneous deprivation is intolerably high and the government's additional burden is minimal.

### REQUEST FOR EMERGENCY AND PERMANENT RELIEF

For the foregoing reasons, Petitioner respectfully asks this Court to grant the following relief:

a. Issue a writ of habeas corpus and order Petitioner released from ICE custody under the February 6, 2026 Order of Supervision, or under reasonable modified conditions set by the Court;

b. Declare that Respondents' revocation of Petitioner's release was unlawful because it violated 8 C.F.R. §§ 241.4 and 241.13, *Kong*, *Zadvydas*, due process, and this Court's February 6, 2026 order;

c. Declare that Petitioner's continued detention is unlawful because lawful removal to Cameroon is not significantly likely in the reasonably foreseeable future;

d. Enjoin Respondents from transferring Petitioner outside the First Circuit pending further order of this Court, except upon advance notice to counsel and the Court sufficient to permit judicial review;

e. Enjoin Respondents from removing Petitioner to Cameroon or any other country not designated in his removal order unless and until Respondents provide the following individualized process: written notice to Petitioner and counsel of the specific country and statutory basis for designation; notice in a language Petitioner understands; affirmative inquiry whether Petitioner fears persecution, torture, or chain refoulement in or from that country, with a written record; at least ten days to prepare for any fear interview; meaningful access to counsel, evidence, and interpretation; a lawful fear screening; IJ review of any adverse screening determination; and at least fifteen days after any adverse screening determination to file or pursue a motion to reopen;

f. Order Respondents, if Petitioner receives a positive reasonable-fear determination as to Cameroon or any third country, to move to reopen or facilitate reopening of proceedings so that Petitioner may present full withholding and CAT claims as to that country;

g. Order Respondents not to rely on generalized diplomatic assurances from Cameroon to bypass individualized withholding, CAT, FARRA, and due process protections;

h. Order Respondents to disclose the documents, assurances, country-selection analysis, removal plan, and communications material to Cameroon's acceptance of Petitioner and to the cancellation of his scheduled fear interview, subject to any appropriate protective order;

i. Award costs and reasonable attorney's fees as authorized by law; and

j. Grant such further relief as the Court deems just and proper.

## DATE AND SIGNATURE

Dated: April 26, 2026

Respectfully submitted,

/s/ Carl H. Hurvich
Carl H. Hurvich, Esq.
Brooks Law Firm
10 High Street, Suite 3
Medford, MA 02155
(617) 245-8090
Carl@Brookslawfirm.com
BBO #698179
Counsel for Petitioner Olivier Misigaro

## VERIFICATION

I, Carl Hurvich, counsel acting on Petitioner's behalf under 28 U.S.C. § 2242, declare under penalty of perjury that the factual statements in this First Amended Petition are true and correct to the best of my knowledge and belief, except as to matters stated on information and belief, and as to those matters I believe them to be true.

Executed on April 26, 2026

/s/ Carl Hurvich


## CERTIFICATE OF SERVICE

I hereby certify that on April 26, 2026 the foregoing document was filed through the Court's CM/ECF system, which will send notice to all counsel of record.

/s/ Carl H. Hurvich